```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NUEVOS AIRES SHOWS LLC,

                         Plaintiff,             MEMORANDUM AND ORDER

          - against -                              19 Civ. 1822 (NRB)

URS BÜHLER, CARLOS MARÍN, DAVID
MILLER, SÉBASTIEN IZAMBARD, IL DIVO,
IL DIVO ENTERTAINMENT TOURS INC.,
JORGE E. PINOS, JEP ENTERTAINMENT
GROUP, INC., COMPANY X, COMPANY Y,
and INSURERS A through I,

                         Defendants.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Urs Bühler, Carlos Marín, David Miller, Sébastien Izambard, Il Divo, Il Divo Entertainment Tours Inc., Jorge E. Pinos, JEP Entertainment Group, Inc., Company X, Company Y, and Insurers A through I (collectively, "defendants") move to dismiss the complaint of Nuevos Aires Shows LLC ("plaintiff"). The Court grants defendants' motion for the reasons stated herein.

## BACKGROUND

Plaintiff, a self-described "world-renowned entertainment company" that "provides booking services for international artists and performers in the music industry," is a Florida limited liability company formed by its "principal executive," Marcela V. Wilte. Compl. ¶¶ 1, 27. Il Divo is a multiplatinum vocal group comprised of singers Urs Bühler, Carlos Marín, David Miller, and

1

Sébastien Izambard. Compl. ¶¶ 2-5. Il Divo Entertainment Tours Inc. ("Il Divo Entertainment") is a Delaware corporation "directly associated" with Il Divo. Compl. ¶ 6. Jorge E. Pinos, a prominent talent agent, is Il Divo's licensed talent agent and JEP Entertainment Group, Inc. ("JEP") is his company. Compl. ¶¶ 9-10; Defs.' Mem. at 2. Companies X and Y are "corporate structure[s] used by Il Divo" that "materially participated in all the acts" alleged in the complaint. Compl. ¶¶ 63-64. Insurers A through I are anonymous insurance companies against whom plaintiff levies no specific factual contentions.

The complaint alleges that in October 2017, Bühler "initiated contact with [p]laintiff to inquire about its management services," Compl. ¶ 25, which led to email correspondence between Wilte, Bühler, and Izambard. Compl. ¶ 27. Specifically, on October 19, 2017, Wilte emailed Izambard regarding a "proposal" to Il Divo to "[p]ut an office directly from [sic] you" and to "[s]et up a press agency that work [sic] on permanently form [sic] for you, setting up every fact, working on a serious anual [sic] marketing plan, press releases and launching the press, work hard especially in the countries that you have not been going for many years, for example Puerto Rico. Obviously this work include [sic] your website, social networks and of course upload all the information abou[t] past, present and future shows." Compl., Ex. 3. Wilte clarified that she "won't do nothing [sic] if you are

2

not agree [sic] and without your approval." Compl., Ex 3. Wilte's email nowhere mentioned a record label. See Compl., Ex. 3.

On October 21, 2017, Bühler replied to Wilte and "[t]hanked [her] very much for [her] offer to install an initial Il Divo office." Compl., Ex. 2. He noted that Il Divo "would like to take you up on this offer," but that it would "in the meantime work on contacting people to install a worldwide office which will take care of Il Divos [sic] administration." Compl., Ex 2. Bühler asked Wilte to "let [Il Divo] know if there is anything from us you need at this point" and "[i]f [Wilte] would like to put a written agreement in place." Compl., Ex 2.

The complaint alleges that after Bühler consented to Wilte opening an administrative office for Il Divo, "the parties agreed verbally" that Wilte "would serve as the exclusive and direct agent for the group in expectation of procuring a major record label deal" for "an extension of time intrinsically tied to the term of the record label contract to be signed, which the parties moreover agreed should be at least five (5) years." Compl. ¶¶ 35-36. Pursuant to this alleged verbal agreement, the complaint asserts that "[p]laintiff successfully procured a lucrative major label contract for Il Divo with UMG Recordings Inc. executed on [sic] 2018 for the term no less than five (5) years." Compl. ¶ 37. The complaint also contends that, after the parties entered the alleged verbal agreement, plaintiff executed a contract with Pinos and JEP

3

for them to "support with the administration of concert dates for" Il Divo, Compl. ¶ 38, and to "mak[e] liaisons with interested record labels," Compl. ¶ 41.

The complaint alleges that in July 2018, defendants "seized [sic] all communication with [p]laintiff," Compl. ¶ 43, and that "[t]o this date [defendants] continue to ghost and avoid [p]laintiff," Compl. ¶ 46.  Consequently, the complaint maintains, "[p]laintiff lost considerable opportunities with other high-profile contacts in the music industry for being thoroughly devoted to developing leads for Il Divo."  Compl. ¶ 49.  Moreover, the complaint alleges that plaintiff failed to receive $10,000 in royalties from "merchandising projects," $10,000 in commissions for "meet and greet type events," and "[d]ue commissions based upon the UMG contract."  Compl. ¶ 48 (emphasis deleted).

On February 26, 2019, plaintiff filed a complaint against defendants, which asserted five causes of action.  First, plaintiff asserted a claim for breach of contract against Il Divo, its members, and Il Divo Entertainment (collectively, the "Il Divo defendants") for "breach[ing] . . . the verbal contract executed by the parties."  Compl. ¶ 66.  Second, plaintiff sought to compel the Il Divo defendants to specifically perform their "monetary obligations" under the alleged verbal agreement.  Compl. ¶ 75.  Third, plaintiff requested punitive damages, interest, attorneys' fees, and costs from the Il Divo defendants for violating the

4

alleged verbal agreement.  Compl. ¶¶ 90-91.  Fourth, plaintiff asserted a claim for tortious interference with contractual relations against Pinos and JEP on the ground that they "caused [the Il Divo defendants] to breach their verbal contract with [p]laintiff."  Compl. ¶ 94.  Fifth, "[i]n the alternative to" its other claims, plaintiff asserted a claim for unjust enrichment against defendants.  Compl. ¶ 103.  Plaintiff requests $4,349,000 in compensatory damages, $12,987,000 in punitive damages, and $250,000 in attorneys' fees.  Compl. at 22-23.

Defendants moved to dismiss plaintiff's complaint.  After the parties had briefed the motion, plaintiff asked "to submit . . . [a] surreply within five business days of the granting of this application," which the Court granted on November 25, 2019.  ECF No. 50.  Plaintiff filed its surreply more than 100 days later on March 11, 2020.  See ECF No. 52.

## DISCUSSION

Defendants move to dismiss the complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  In re Terrorist Attacks on September 11, 2001, 714 F.3d 118, 122 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In determining whether a complaint meets that standard,

5

"the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### 1. Breach of Contract and Specific Performance

Defendants argue that the Court should dismiss plaintiff's breach of contract and specific performance claims against the Il Divo defendants because the alleged verbal agreement on which those claims are based violates the Statute of Frauds, and because plaintiff has failed to allege the terms of the alleged verbal agreement with sufficient specificity. The Court addresses each argument in turn.

#### A. Statute of Frauds

Under New York law,[1] "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5-701(a)(1). "New York courts

---

[1] New York law applies because the parties rely on it in their submissions to the Court. See, e.g., Clarex Ltd. v. Natixis Sec. Am. LLC, No. 12 Civ. 7908 (PAE), 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("[T]he Court applies New York law . . . because all parties apply New York law in their submissions: Where 'the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.'" (internal quotation marks and alterations omitted) (quoting Wolfson v. Bruno, 844 F.Supp. 2d 348, 354 (S.D.N.Y. 2011))).

generally construe the [S]tatute of [F]rauds narrowly, voiding only those oral contracts 'which by their very terms have absolutely no possibility in fact and law of full performance within one year.'" Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 110 (2d Cir. 2014) (quoting D & N Boening, Inc. v. Kirsch Beverages, Inc., 472 N.E.2d 992, 993 (N.Y. 1984)). "'The critical test . . . is whether "by its terms" the agreement is not to be performed within a year.'" Morgenweck v. Vision Capital Advisors, LLC, 410 Fed. App'x 400, 401 (2d Cir. 2011) (internal citations omitted) (quoting Freedman v. Chemical Const. Corp., 372 N.E.2d 12, 15 (N.Y. 1977)).

The alleged verbal agreement provided that "Wilte would serve as the exclusive and direct agent for [Il Divo] in expectation of procuring a major record label deal," and that "they would work together for an extension of time intrinsically tied to the term of the record label contract to be signed, which . . . should be at least five (5) years." Compl. ¶¶ 35-36 (emphasis added). Accordingly, neither party could perform fully under the alleged verbal agreement for at least five years after entering it, and the alleged verbal agreement is void unless plaintiff has alleged

7

a writing sufficient to satisfy the Statute of Frauds.[2]

Plaintiff has not done so. The complaint nowhere alleges that the terms of the alleged verbal agreement were ever reduced to a writing. Plaintiff instead argues that the October 2017 emails between Wilte and Bühler suffice to evidence the agreement under N.Y. Gen. Oblig. Law § 5-701(b)(3), which provides that "[t]here is sufficient evidence that a contract has been made if . . . [t]here is evidence of electronic communication . . . sufficient to indicate that in such communication a contract was made between the parties." But the October 2017 emails predate the alleged verbal agreement, and they concern only Wilte's "offer to install an initial Il Divo office." Compl., Ex. 2. Moreover, the October 2017 emails fail to "'identify and describe the subject matter and state all the essential or material terms of the contract,'" which a writing must do in order to satisfy the Statute of Frauds. Foros Advisors LLC v. Digital Globe, Inc., 333 F.Supp. 3d 354, 363 (S.D.N.Y. 2018) (quoting Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc., 619 N.Y.S.2d 260, 262 (N.Y. App. Div., 1st Dep't 1994)).

---

[2] Plaintiff asserts in its opposition and surreply that the Statute of Frauds does not apply to the alleged verbal agreement because plaintiff allegedly "almost immediately put together a tour for Il Divo" after entering the alleged verbal agreement. Opp. at 6; see also Surreply at 2, 4. Plaintiff "labor[s] under the mistaken impression that the Statute of Frauds is concerned with partial performance of an oral contract. It is not. Rather, it requires that an oral agreement be capable of complete performance within a year to be enforceable." Almeciga v. Ctr. for Investigative Reporting, Inc., 185 F.Supp. 3d 401, 410 (S.D.N.Y. 2016) (emphasis in original).

Accordingly, the alleged verbal agreement is void under the Statute of Frauds, and plaintiff's breach of contract and specific performance claims against the Il Divo defendants must be dismissed because those claims require the existence of an enforceable contract. See, e.g., RCN Telecom Serv., Inc. v. 202 Centre St. Realty LLC, 156 Fed. App'x 349, 350 (2d Cir. 2005).[3]

**B. The Terms of the Alleged Verbal Agreement**

Plaintiff's breach of contract and specific performance claims also must be dismissed because plaintiff has failed to allege the terms of the alleged verbal agreement with sufficient specificity. "'It is well settled that for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty. Even if the parties believe that they are bound, if the terms of the agreement are so vague and indefinite that there

---

[3] Plaintiff tries to avoid the application of the Statute of Frauds to its breach of contract and specific performance claims by arguing in its opposition brief that promissory estoppel precludes the Il Divo defendants from contesting the enforceability of the alleged verbal agreement. The Court rejects this assertion of promissory estoppel because "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers." Lombardo v. Dr. Seuss Enter., L.P., No. 16 Civ. 9974 (AKH), 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017). Moreover, for promissory estoppel to overcome the Statute of Frauds, "plaintiff must demonstrate 'unconscionable' injury, i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." Merex A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 826 (2d Cir. 1994) (emphasis deleted). Plaintiff has failed to allege any such injury. See, e.g., Mobile Data Shred, Inc. v. United Bank of Switz., No. 99 Civ. 10315 (SAS), 2000 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000) ("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation.").

9

is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract.'" Foros Advisors LLC, 333 F.Supp. 3d at 360 (quoting Candid Prods., Inc. v. Int'l Skating Union, 530 F.Supp. 1330, 1333 (S.D.N.Y. 1982) (Weinfeld, J.)). Thus, to plead a claim for breach of contract or specific performance, plaintiff "must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Valentini v. Citigroup, Inc., 837 F.Supp. 2d 304, 327 (S.D.N.Y. 2011) (internal quotation marks omitted).

Plaintiff has failed to do so. The only allegations in the complaint concerning the content of the alleged verbal agreement are that "Wilte would serve as the exclusive and direct agent for [Il Divo] in expectation of procuring a major record label deal," "[p]laintiff would put its contacts and clout to achieve such a deal," and plaintiff and the Il Divo defendants "would work together for . . . at least five (5) years." Compl. ¶¶ 35-36. These "simple characterization[s] of the promise" fail to allege the specific terms of the alleged verbal agreement. Fink v. Time Warner Cable, 810 F.Supp. 2d 633, 645 (S.D.N.Y. 2011). They fail to assert plaintiff's specific obligations to the Il Divo defendants, such that the Court could determine whether plaintiff

10

has performed those obligations, as required in adjudicating a breach of contract claim. See Balk v. N.Y. Inst. of Tech., 683 Fed. App'x 89, 95 (2d Cir. 2017) ("Under New York law, a breach of contract claim requires . . . adequate performance of the contract by the plaintiff." (internal quotation marks omitted)). They also fail to assert what compensation or fees the Il Divo defendants would owe plaintiff for its performance, such that the Court could remediate a breach. Moreover, there is no extrinsic standard under which the Court could render the alleged verbal agreement reasonably certain to cure these pleading deficiencies. See Foros Advisors LLC, 333 F.Supp. 3d at 360.

### 2. Attorneys' Fees, Punitive Damages, Costs, and Interest

The Court dismisses plaintiff's claim for punitive damages, attorneys' fees, costs, and interest because plaintiff consented to its dismissal in plaintiff's opposition brief. Opp. at 1 n.1.

### 3. Tortious Interference with Contractual Relations

Defendants contend that because the alleged verbal agreement between plaintiff and the Il Divo defendants violates the Statute of Frauds, plaintiff cannot state a claim for tortious interference with contractual relations against Pinos and JEP because that claim requires "the existence of a valid contract between the plaintiff and a third party." CAC Grp., Inc. v. Maxim Grp. LLC, 523 Fed. App'x 802, 806 (2d Cir. 2013) (internal quotation marks omitted). However, "'[a] contract not drawn in accordance with the

11

Statute of Frauds is not ipso facto void but only voidable, subject to being declared void if and when the [S]tatute [of Frauds] is interposed as a defense at the proper time and in the proper way.'" Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd., 568 F.Supp. 2d 329, 347 (S.D.N.Y. 2008) (quoting Felicie, Inc. v. Leibovitz, 412 N.Y.S.2d 625, 626-27 (N.Y. App. Div., 1st Dep't 1979)). Moreover, Pinos and JEP cannot interpose the Statute of Frauds defense properly because "'the Statute of Frauds is a personal defense and cannot be availed of by a third party'" to the contract. Id. (quoting Felicie, Inc., 412 N.Y.S.2d at 627) (collecting cases). Such is the case notwithstanding the Court's conclusion that the alleged verbal agreement is void against the Il Divo defendants. See id. at 347-48.

While Pinos and JEP cannot interpose the Statute of Frauds to defeat plaintiff's tortious interference claim in the same manner as the Il Divo defendants, the voidable nature of the alleged verbal agreement "nonetheless changes the analysis of" plaintiff's claim. Id. at 347. Specifically, where, as here, the contract "is unenforceable and thus voidable, [p]laintiff's tortious interference with contract claim . . . must satisfy the more demanding standard required of claims of tortious interference with business relations." Id. at 348 (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 449 (N.Y. 1980), and collecting cases). Plaintiff must plead "'that (1) it had a

business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Id. at 342 (quoting State St. Bank and Trust Co. v. Inversiones Errezuriz Limitada, 374 F.3d 158, 171 (2d Cir. 2004)).

The amended complaint does not even arguably allege the second, third, and fourth elements of tortious interference with business relations against Pinos and JEP.  The Court therefore dismisses plaintiff's tortious interference claim.

### 4. Unjust Enrichment

"It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label . . . 'unjust enrichment' . . . to the underlying contract claim." Morgenweck v. Vision Capital Advisors, LLC, 410 Fed. App'x 400, 401 n.1 (2d Cir. 2011).  Plaintiff tries to do just that, however, by asserting an unjust enrichment claim against the Il Divo defendants for the services plaintiff performed under the alleged verbal agreement.  Similarly, "'a claim for unjust enrichment . . . may not be maintained where a contract exist[s] between the parties covering the same subject matter,'" Morgenweck v. Vision Capital Advisors, LLC, No. 08 Civ. 2969 (BSJ), 2010 WL 9478990, at *5 (S.D.N.Y. June 3, 2010), but plaintiff's unjust enrichment claim

13

against Pinos and JEP is based on services that Pinos and JEP allegedly performed for the Il Divo defendants pursuant to a contract Pinos and JEP had with plaintiff, Compl. ¶¶ 38, 41. Moreover, to plead a claim for unjust enrichment, plaintiff must allege that defendants were "enriched . . . at the plaintiff's expense," Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., 481 Fed. App'x 622, 627 (2d Cir. 2012), but the only allegation of any gain to defendants is that they "derived benefits at the expense of losses suffered by [p]laintiffs [sic]," Compl. ¶ 60, which is nothing more than a "'naked assertion[]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Plaintiff's claim for unjust enrichment is accordingly dismissed.

## CONCLUSION

The Court grants defendants' motion to dismiss for the reasons stated herein. The Clerk of Court is respectfully directed to terminate any motions pending in this case and to close it.[4]

**SO ORDERED.**

Dated:   New York, New York
         April 17, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[4] Defendants requested oral argument pursuant to this Court's Individual Practices § 2.H. The Court declines to hear oral argument on this motion given the legal bases on which the Court resolved it, and because the Court has ruled in favor of the only party that requested oral argument.